Good morning, ladies and gentlemen. Council for Appellants, if you have reserved rebuttal time or wish you had, please let us know that at the outset of your argument. It helps us to keep track as well. You may call the first case. Good morning. Before I begin, I would just like to take a moment to introduce Tiffany Webber. She is a lawyer who practices with the Nettles-Harris Law Firm. She is a graduate of Duke Undergraduate School and the University of Alabama Law School. Thank you, Your Honor. Judge Batchelor, I would like to reserve four minutes for rebuttal, please. May I please the Court? My name is Linda Nettles-Harris and I represent the appellants in this appeal. The District Court erred in dismissing the amended complaint for the following reasons. Considering the allegations of the amended complaint in the light most favorable to the complaint sufficiently alleged a constitutional violation of the plaintiff's due process and equal protection rights both under the United States Constitution as well as the Tennessee State Constitution. Now, I would like to just point out some specific paragraphs of the amended complaint because I know that there are quite a few. Paragraph 43 of the amended as techniques that result in tension on hair strands such as twisting, wrapping. It gives a number of processes. But most important, I want the Court to remember this, is by hand or mechanical appliances. Now, this would necessarily include hair dryers, curling irons, flat irons for natural hairstyles dealing with African-American or black hair. Paragraph 44 of the amended complaint. Alleged it's the State of Tennessee Board of Cosmetology assess for the statutory scheme. And it talks about the 300-hour requirement, 180, 120 allegedly for sanitation, sterilization. And it names all of those. And I won't go into all of those. I'm just going to point out these. All of those would be relevant though, right? Sanitation. You don't have to be clean when you do this. Well, Your Honor, here's the problem that we have. If the hundred, it's our position that the 180 hours would include unnecessary training. And when I say unnecessary training. I was just asking about the 120 though. Well. 120 is not unnecessary, right? It could be, Your Honor. It could be. Because if the 180 hours involves flat irons, hot comb, and all the things that they're not going to use, we don't know how many of those 120 hours deal with sanitation of equipment that these plaintiffs will never use. So we don't know at this point whether or not that entire 120 hours of sanitation is applicable to these plaintiffs. I just want to ask one question. I don't want to interrupt the flow of your argument too much. If we throw out, if we find that the Constitution doesn't permit this kind of requirement because some of it will not be used by the people who are being licensed, doesn't that sort of create an engine by which anybody who's licensed can go through and say I don't want this block of instruction because I don't plan to do that kind of activity. So I don't know what gets licensed in Tennessee. If you have to be licensed to be a mechanic, can you say I only want instruction on brakes maybe because I don't plan to do fuel tanks or something? I mean it just seems a little bit content specific to use the Constitution to go around and say I want to use it to tailor the instruction that's required to engage in a particular profession just because I don't intend to do certain aspects that the state has included within that profession. That's my concern. I've got to tell you that's my concern. I understand you. How do you respond to that? Well, I want the court to understand that natural hairstyling includes so much more than hair braiding. It is, the plaintiffs only want to do hair braiding. They don't do anything else. In a natural hairstyling... Wouldn't that happen in any of these examples I'm imagining? They could say I only want to do very little. I only want to do, you know, brakes on motorcycles. No, Your Honor. I just don't want to do the rest of it. No, manicurists. They only do manicures. They only do... and this is the same type of scheme. They only do the nails. They only do that... this is a specialized area. Shampooists. The state of Tennessee recognizes that they're shampooists under the same statutory scheme. They're only allowed to do shampooing. What sort of relief are you asking that it's not applicable to your group at all because it's just... they're not cosmetologists or hair stylists at all? No, Your Honor. What I'm saying is that there are 180 hours. I would submit to the court it could be 160 according to the amended complaint. There is very little instruction that goes towards hair braiding. That could be said about lawyers, couldn't it? A lawyer would say, well, I'm not going to do bankruptcy or federal law. I'm just going to do state law and divorce. So I should only be tested on divorce law. What about that? No, Your Honor. Everything in law school deals with the law. And a lawyer would use everything we learn at some point throughout our career, whether it's constitutional law, property law. But if we were taught anatomy, we wouldn't use that in law school. So therein lies the difference. I want the court to really understand that this is unique. I mean, a hair braiding shop has nothing in it but stools for you to have twists in your hair. In a natural hair school, if we turn it around, the people who go to the natural hair schools, if what I say is true to you, accepting is true, which the court had to do with the complaint, there is very little hair braiding training there. So now, if these people were paying $3,000 to $4,000 and the shoe were on the other foot and all of the training was exclusively hair braiding, and when they graduated they couldn't do natural hair, which is flat iron, curling, rolling, all of these things which are never used by these individuals. That's completely unnecessary training that has nothing to do with this trade at all. And I'm trying to bring home that distinction, because it is very, very distinct and it is very specialized. Let me go back to the midwives. Midwives deliver babies. OBGYNs deliver babies. But there's this recognition that this is a very limited specialized area. And the state of Tennessee doesn't ban midwives? I'm sorry? The state could require midwives to be doctors? No. Could not? Would be unconstitutional? Well, no, it wouldn't be, but in the state. That's what I'm worried about. If we accept your theory, we'd be, in effect, saying something. That you can't require midwives to be doctors? Right. Okay, but there is this recognition, Your Honor, that there is a specialized area. I'm talking about whether we would then be in the United States, wherever they want to broaden the requirements for people who are in narrow subspecialties and say members of that narrow subspecialty have to be licensed in the larger specialty. Is that the rule? No, sir. I think you have to look at the, if you look at the overall statutory scheme of the Tennessee Cosmetology Act, they do have specialized areas, Your Honor. They have them. My question is whether they have to have them. Well, Your Honor, here's, if we focus on what the issue is, there is, according to this amended complaint, they are not getting any training or very little training in the area that they need. If I went to law school and I only got one law class, the whole three years I was there, and I was being taught medical training, clearly, I'm not going to use any of that. But that's the analogy that I would hope that the court would see. Can I ask you one kind of procedural question? If we were to rule that this dismissal was premature, it might have been appropriated at the summary judgment level, but not at the dismissal level, that would, in effect, be saying that more evidence would be needed. What kind of more evidence would there be? Your Honor, it would be evidence to show that, in fact, there is no training, I mean, that there is very little training that is applicable to their training. What if we assume that you are accurate about that? I'm sorry? What if we assume that you are accurate about that, that there's very little training that would actually help? Then I would rely upon Craig Myers, I mean, Craig Myers in that particular case. If we assume that, what more, would any additional evidence be useful to our analysis? Absolutely, Your Honor. Oh, that's what I'm asking. Okay, because the amended complaint says that there is no natural hair braiding training, if, in fact, we learn that, first of all, I hope that the Court understands that there is a very distinct difference between natural hair styling and hair braiding. But what if we assume that? Okay, so we would find out, we would submit that we would find out that 4% of what they're being trained for actually is applicable to their trade, their profession. What if we assume that? Then they're receiving unnecessary training, they're paying thousands of dollars for something they're never going to use. If we assume that, then we really should decide this, if we assume that, then we can decide it at this level, right? No, Your Honor. I would submit to the Court that it would have to be at the summary judgment level. The Court did consider things outside of the pleading, and I did not get a chance to talk about that. I wanted to talk about the things that went on in the District Court's order and the assumptions that the District Court said. What the District Court said is that 40% of the classroom time appears to be dedicated to sterilization. We don't know that, Your Honor. That's what the statute says, that it's 40% on the face of it, maybe. It says 100... The Court did use the statute in that decision. But what the Court relied upon was the, I think the Court did an inappropriate analysis. I didn't get a chance to really, I'm out of time and I didn't get a chance to really expound on my argument, and I wish that I had had an opportunity to try to explain to the Court, because I don't think even the District Court really got the concepts of what the complaint is really alleging. And that's the problem, is that I have not had an opportunity to try to explain why I think the District Court erred. So I'll try to do so on rebuttal. Thank you very much, Your Honor. Thank you. May it please the Court, my name is Brad Buchanan. I am here from the Tennessee Attorney General's Office on behalf of the Tennessee Cosmetology Board and its members. Of course, as Ms. Harris indicated, this case raises constitutional claims under both the due process and equal elemental rights, nor does it create a suspect classification. And so under both prongs of her argument, we are engaging in rational basis review. And because these regulations are rationally related to a legitimate government interest, they should be, or were properly upheld by the District Court when it dismissed the complaint. And the District Court should be affirmed by this Court. Did the District Court prematurely grant the be the same result? I don't believe it was premature, Your Honor. As Judge Rogers indicated, if we take everything alleged in the complaint as true, there's still not enough to make out a case here. Everything that they've alleged does not establish a due process or equal protection claim, nor is there anything they could allege, because this is such an absolutely clear area in which the state is entitled to broad discretion to engage in denigrate these statutes as they stand and as they apply to the plaintiffs. Do you agree that the degree to which, at some point, the degree to which the education is useless might lead to a constitutional violation? It could, Your Honor, absolutely. If they required them to take 100 hours of gardening, maybe that would be constitutionally a problem? It absolutely would be, Your Honor. So that makes it sound like it's kind of a factual issue as to just how relevant it is, that somewhere along the line, you've got to draw the line and say this is close enough. Is that kind of fact-intensive? It would be if they had alleged those kinds of facts. It says they allege that it's not used for hair braiding. It's all this using of irons and stuff. I think part of the problem is that Ms. Harris's argument sort of conflated what the statute requires and what the rule requires for the curriculum with what they're alleging they were taught in schools. We have to accept their allegations, though, right? We do, but what is... Their allegations are even though the words are the same, in fact, it's completely different. It's as if the word gardening somehow could be used to worm rowing or something, I don't know. Sure, but what they're challenging is the constitutionality of the statute and the rule effectuating that statute, not the way that these schools, which are not operated by the state, these are private schools licensed by the state, not how they're teaching. You said at some point if they're teaching something that's totally irrelevant, it could be a constitutional problem. I apologize, I conflated something. I was referring to the idea that if the cosmetology board required them to teach gardening in order to become a hair braider. They require them to teach, I don't know, curriculum X. Yeah, sure. We find out later, as a matter of fact, that curriculum X amounts to gardening rather than hairstyling. But it doesn't. As alleged in the complaint, the plaintiffs themselves acknowledge that their discipline of African hair braiding involves braiding, locking, twisting, weaving, and cornrowing. The definition of natural hairstyling, which is the license under which they come, includes techniques that result in tension on hair strands such as twisting, wrapping, weaving, locking, or braiding. The same physical activities. That's our reading of those words, right? Right. What if that reading needs to be informed by what actually happens in the schools? I think that's a problem for the schools. That's not a state action. The state is telling the schools what to teach by using the exact same words that the plaintiffs used to describe themselves. The state is saying, teach these individuals, these applicants, how to braid, how to twist, how to lock, and how to weave. If the school is not doing that, that's a problem that these applicants should take up with their school, because they paid money to get an education that is not applicable to them. So there's a difference between what the state has regulated and required, which is found in the statute and the rule, and what the school might be teaching. And even if we accept those allegations about what is happening at the schools as true, that does not impugn the state regulation, which is clearly on point. They've indicated, and we have to accept as true, as alleged in the complaint, that African hair braiding is a cultural art that is distinctive. It has cultural, geographic, historical roots, and it's much different than the broad version of natural hairstyling as defined in the statute. And I think we can accept that as true. Natural hairstyling is sort of an umbrella term for the physical manipulation of the hair without the use of dyes and chemicals. Coming within that is this particular type of art form called African hair braiding. I'm no expert on how this works, but I'm assuming from the complaint that there's a particular style in which they braid the hair as opposed to all the different possible styles that you could use. But what it comes back to is the state is not interested in teaching everybody how to become great African hair braiders. They want to make sure that anybody who braids hair in this style or any other style has demonstrated that they have the physical toolbox to do this. That's why the regulations require them to be educated or licensed in braiding, locking, twisting, and weaving. They said, the regulations essentially say, if you're going to braid hair, you have to show us that you know how to braid hair. Go and do whatever style you want to once you've demonstrated that. You know, whether you bring that from your own background or you study under somebody else, master this art, that's fine, that's great. But we want to ensure that before you sell those braiding services to consumers of Tennessee, we know that you can safely, hygienically braid hair, that you have the physical skills to do that. And that's all this requires. They don't require quite as many hours as they do for a regular beautician, right? Not nearly. Cosmetology requires 1,500 hours. And absent the natural hair styling subspecialty, these applicants would be having to apply for a cosmetology license because Tennessee defines cosmetology to include arranging the hair of any person by any means. Prior to 1996, these individuals would have had to obtain that 1,500 hour cosmetology license, which would certainly have included enormous amounts of stuff that they don't need and don't do. Everything related to the use of dyes and chemicals, cutting, all those sorts of styling issues. Instead of trying to apply that onerous, burdensome, and largely inapposite regime to these applicants or their forebears, the state of Tennessee created a compromise. California and Utah, some of the states that were cited in the papers, didn't do that. They tried to impose their 2,000 or 1,600 hour regimes on hair braiders. Tennessee said, that's not a good idea. Rather than do that, rather than be here fighting that battle, the state of Tennessee's legislature said, let's come up with a subspecialty license. Exactly what Ms. Harris is requesting. Because the natural hair styling license is the subspecialty. It is the equivalent of carving out an exception from cosmetology for manicurists and shampoos. Again, I'm not an expert on what goes on in manicuring, but there could be many different manicuring styles. They're all coming within the manicuring subspecialty. All of the different physical braiding and locking styles come within natural hair styling. So we already have a subspecialty. Tennessee has already taken that step and created a compromise. Is this all information that the district court had before it in passing on this? Or is this extraneous information? That information was presented to the district court in the form of the law as it stood prior to 1996 and the fact that this was enacted in the public act in 1996. So this is through the statutes and regulations of Tennessee? Yes, Your Honor. I mean, we don't need to rely on any narrative history about how this came to be. It's simply a matter of looking at the definition of cosmetology before 1996, realizing that it applied in its breadth, and realizing that after that we have a much more defined and narrowly tailored regime under which we're traveling. I'd also like to point out that just as, and I believe the court alluded to this during the opening argument, but it is not uncommon to have what I've called an umbrella regime. Natural hair styling is an umbrella for everybody who does braiding and locking and twisting. Law is an excellent example. Medicine is an excellent example. We don't say that somebody who only wants to practice toxic torques or med mal doesn't have to get a law license. So this is not at all uncommon. The degree of specificity with which the state chooses to regulate professions through licensure is right at the heart of the broad policymaking discretion that the courts have long accorded the states, as this court did just recently in the Liberty Coins decision when it said that the power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance  So this sort of licensure, this fine detailed minutiae of how to license professions is at the heart of what state policymaking is all about, and the U.S. Supreme Court time and again has instructed the federal courts not to substitute their social and economic beliefs for those of the state legislatures. But have they done it in motions to dismiss as opposed to summary judgments? But that's sort of the point. There's really nothing that they could introduce that they could possibly make this an open question. Even if it was an open question, that doesn't matter because we're proceeding under rational basis review. All of the 180 hours was useless to them, which is basically what they say might be shown. We would still have to uphold it. Again, I have to go back to the difference between a private school licensed by the state and the state action. What's at issue here is what the state has done. They say there's no private schools that offer anything that would be useful. So they're forced to go and pay. We're taking what they allege, right? Because no more facts are going to be taken into account if we're going to rule for you. That this 180 hours is just useless if you look at any of the schools that are licensed that they would have to pay for. If that were the case, would it still be that we would have to uphold? I think it is. I think that's a contract. That's what we're ruling, if we uphold you, is that the state can require them to take 180 hours of useless training. That's what they allege, right? That's what they allege. I disagree with that, Your Honor, because I think that... You don't allege that? I think that still is... They allege... Again, I'm not sure with how much specificity. They didn't say that there is no school from which they can obtain this. They said that this is what they found. But even assuming that they allege that there is no school that provides this actual instruction that is required by the rule, that is required by the statute, again, that's an issue with their school. It's an issue with what they paid to receive from the school. It would be more or less onerous for them to obtain. It's still the same 300 hours. So if they get a license, that's really the state of Tennessee's issue with the school or their issue with the school. It's not their issue with the state of Tennessee. Can they go to schools in other states? They can. And that brings us to the reciprocity statute, which they allege is different for them than it is for other applicants. But that's not, in fact, the case. As we indicated, I believe... I'm not talking about difference. I'm talking about can. It's a practical matter. Can they find another school in another state and take 300 hours that includes twisting and braiding more to their desire and have that count by reciprocity? Before I go that far, if another state has regulations or requirements that are the same or greater than Tennessee's and they get licensed in that state, then they can bring that license into Tennessee. I know that's not what the court specifically asked. That's what I'm asking. Right. So theoretically... You don't like the three law schools in your state because they emphasize environmental law. You don't care about environmental law, so you go to a law school in another state. In most states, that's no problem. Right. That's true. Is that the case here or not? Not to my knowledge, Your Honor. No. Not to my knowledge. Is that something we could find out if we let this go to summary judgment without doing it by motion to dismiss? I believe we could find that out, but again, I don't believe it's relevant. So it doesn't matter if they have to go within the state in order to rule for you? I don't believe so because the state is entitled to issue licenses as it sees fit to ensure that the curriculum being taught is the curriculum that they believe these applicants need. Does the state put up any barriers to schools that do teach cosmetology teaching in a way that would be perhaps more friendly to the hair braiders? I don't believe so, Your Honor. The statute basically has the same licensure regime for instructors regardless of what part of the cosmetology discipline that they're operating under. So no, I don't believe it's any more difficult for a cosmetology school to be licensed to teach hair braiding than any other aspect of cosmetology. Your Honor, I have nothing further unless the Court has any additional questions. Thank you. I do not. Thank you. May it please the Court. I want to first state that the state said that we have not alleged a fundamental right, and we absolutely have. The appellants have raised in this amended complaint, which has to be accepted as true, that they have a liberty interest to engage in... But we don't have to accept as true legal conclusions. We only have to accept as true facts that are pled. That's correct, Your Honor. Sorry, I misspoke. They have alleged a liberty interest, and if they can prove that it's true, then they do have a fundamental right to engage in the employment. That's a legal question. That's not a question that is dependent upon fact. Okay. Let me just move on, if I can, please, Your Honor. The amended complaint does allege that even the amended complaint, the judge asked about specific instructions. I want to emphasize the statute itself says that braiding, it says weaving, extending, locking, or braiding, and it also says that the use of mechanical devices. When you talk about the hours that are needed, it distinctly says wrapping, weaving, locking, braiding, and natural hairstyling. So on the face of it, it shows that there is a difference. If the complainants can prove that 4% to 5% of what they learn is actually braiding and all of the rest of it deals with all of the other different types of natural hair braiding, then I will submit to the court that we would show that it is not rationally related to a legitimate state purpose, which they say to protect the health and safety of the public. If they're not receiving any training that relates to that, and if we know we have an insurmountable, that is a large burden, but that doesn't mean that we don't allege facts that, if proven as true, would show that they are entitled to the relief. But if those facts, if we assume that fact, the very one that you just stated. I'm sorry? If we were to assume the fact that you just identified, you could show and say that and read the law and say that under the very deferential rational basis test it still met the test, then we would have to affirm. Is that correct? If that were the case as a matter of law, that only 4% was relevant. Right. If we said that met the rational basis test, which you disagree with. Yes. But if we disagreed on that legal issue, then putting it over to summary judgment would not make sense. Is that correct? Well, Your Honor, I don't know without more discovery. I just can't. I'm not prepared to answer that because I don't know. I would hope that you would not. I mean, I would hope that it would not be the law that you could have someone do all of this unnecessary training to be a mechanic when you want to be a plumber and then say, okay, well, because this is the statutory scheme, that's constitutional. I would submit to the court that the judge prematurely dismissed the case without allowing the plaintiff's opportunity to prove the allegations in the complaint. We do point out that it is the contention of the complainant that the amended complaint and that the very language itself and that the applications does not apply to these plaintiffs. And because they're being forced to take all of this unnecessary training, which is not going to protect the public health and safety of the community, then they have stated a claim upon which relief can be granted. Thank you very much, Your Honor. Thank you, counsel.  What did I call the next one?